It is so ordered, so now we'll hear the next case for argument, which is Kiran v. Kijakazi. Counsel for the appellant may proceed. Thank you. Good morning, Your Honors. May it please the Court. Catherine A. Miller on behalf of June Kiran, the appellant in this matter. I would like to reserve two minutes for rebuttal. This case involves a claim for Social Security disability benefits based primarily on the depression, anxiety, panic attacks, and concentration deficits from a host of mental diagnoses, which include depressive disorders, ADHD, panic and anxiety disorders, agoraphobia, social phobia and anxiety, PTSD, avoidant personality disorder, and dependent personality disorder. The broad issue is whether the ALJ erred in rejecting Ms. Kiran's disability claim, and more specifically, we contend that the ALJ erred in failing to meet the legal and evidentiary standards to reject three categories of evidence, which are Ms. Kiran's subjective symptom testimony, the opinion of her psychiatric mental health nurse practitioner, Mr. Morris, and the written lay witness reports from three people, which are in the record as well. Turning to Ms. Kiran's subjective symptom testimony, she reported stress and anxiety, which caused her to completely shut down, making her unable to move or speak. She both in the record and in testimony reported cyclical symptoms, and I think that's really what this case comes down to, is whether she is capable of sustaining full-time work in light of her cyclical severe mental symptoms. She stated that on a bad day, she cannot leave her room, and she just alternates crying and watching a show. She can't talk to people that she doesn't know. She struggles to maintain concentration. She has flashbacks and nightmares. She needs reminders to eat and to do household chores. She isolates at home and struggles to go out. She's afraid of social encounters. She does not drive because she's afraid of having a panic attack while behind the wheel. She's intimidated by authority figures. She has been fired in previous jobs because she frequently called out sick due to anxiety and an inability to be around other people, and ultimately, the severity and frequency of her panic attacks vary, and so I think that it's undisputed that there are times in the record where she indicates improvement in the frequency of her panic attacks. So there are varying reports from at the time of the hearing when she was experiencing panic attacks every day, which lasted from 20 minutes to six hours in duration, to other times in the record indicating that she had, quote, one bad panic attack per month. And so I also would submit that we don't know what, you know, the difference in severity is that only touches really to frequency. We don't really understand the difference in terms of severity, in terms of how long the panic attacks last. When she says that she has one bad panic attack per month, how many panic attacks are occurring that month that are not bad? Ultimately, our position is that the ALJ erred in evaluating all of that testimony because she made a boilerplate finding that Ms. Curran's testimony was not entirely consistent with the record, and then selectively summarized the record to support that finding. The ALJ did not, however, identify specifically what testimony she found inconsistent with the record, nor did she explain how the evidence undermines that testimony. So this court... Could I ask you a question about the medical evidence in the record? There was the treating professional, as I understand it, was a nurse practitioner, is that correct? It is. And that nurse practitioner's testimony was... Evidence was discounted by the judge because he made a conclusion as to her ability to work. But was there other testimony or other evidence offered by that nurse practitioner that should have been considered and was not? Well, there are chart notes documenting the treatment provided by Nurse Morris. And so, ultimately, what Nurse Morris concluded or submitted as an opinion, as a statement, is again this issue of whether Ms. Curran can sustain based on the cyclical nature of her symptoms. And he said, I believe he said, you know, I'm not in the business of fortune telling, so I can't predict the specific number of days that she would miss work each month. But she cannot maintain long-term, full-time gainful employment. And her anxiety will prevent her from maintaining consistent attendance. And we submit that based on Hill v. Astruth, this is not a conclusory statement of disability. And particularly in light of the evidence documented in Nurse Morris's chart notes, which do indicate that she has cyclical symptoms that persist despite treatment. This is not a conclusory statement on the ultimate issue of disability, but instead, you know, an evaluation of whether she can sustain within the workforce. And so, the second basis that the ALJ identified to reject that evidence was that, you know, this general statement that she essentially accepted this opinion to the degree that it agreed with the RFC. And again, under LeBaron, this is also not a basis to dismiss or kind of pull apart evidence and accept it only as it agrees to the RFC. I hope I answered your question there. Well, are you saying that the ALJ ignored the underlying observations of the nurse practitioner and discounted all of that evidence improperly? Well, the ALJ, if I may just turn to the decision, the ALJ did summarize on paper page 21 of the record, Nurse Morris's psychiatric evaluation initial meeting with Ms. Kieran. However, that was part of the sort of selective summary that the ALJ posed in evaluating Ms. Kieran's testimony. And if you look at that, the overall nature of that summary, it's really a focus on periods of improvement. And although not stated, clearly stated as a basis to reject any piece of evidence, the suggestion is there, right, that Ms. Kieran has improved, that treatment has provided improvement. So, an example of that would be in the ALJ citing evidence that, you know, Rena Bacchus, Dr. Bacchus stated that the psychiatric, or excuse me, I'm so sorry, that panic attacks were not occurring frequently. And panic attacks in Dr. Bacchus's chart notes, panic attacks were occurring four times a week at the time. But that is not here, the ALJ has not evaluated that evidence. And so, we submit that in general, including Nurse Morris's chart notes, the ALJ did not evaluate those. It really was a selective evaluation to support the RFC. If there are no further questions, I would like to reserve my remaining time. Thank you. Thank you. Thank you. Mr. Staples, you may proceed. You're welcome. May it please the Court, Jeff Staples here for the Commissioner, who asks that you affirm the District Court's judgment, because substantial evidence supports the ALJ's finding of fact. This is not a case in which Kieran showed up to the hearing and described waxing and waning symptoms, you know, some days good, some days bad. Kieran told the ALJ that she could categorically not be around people, that she was having panic attacks every day, eight hours a day, during which she could not think or move. But the record just didn't line up with those claims. At transcript 331, Kieran told her provider she was able to function socially and she enjoyed doing things with her friends. At 425, she said that her typical anxiety was only a 4 out of 10, which is a far cry from what she described at the hearing. At 570, she said she was spending more time with people and getting more used to it. At 425, she said therapy was helpful. At 610, she said she had fun at a county fair and did just fine without any anxiety-related symptoms. So what the ALJ did is he summarized Kieran's... All those... He summarized those positive statements that were in the record. But there were an awful lot of negative statements, isn't that correct? That's true, Your Honor. This is not a... Go ahead. I'm sorry. This is not a one-sided record. It's not like there's only good evidence or only bad evidence. But the problem for Kieran is that she came to the hearing and said, all my days are bad. I can never be around people. I always have these panic attacks. And that's what wasn't borne out by the record. So the ALJ agreed with Kieran that she did... Where in the ALJ's opinion does the ALJ express the position that Kieran was testifying to a permanent state of bad panic attacks, which was in conflict with the cyclical nature of the underlying evidence? And there's nothing in the ALJ's decision that seems to be explaining the reasoning that you're articulating now. Yes, Your Honor. So at the bottom of page 20 of the... That's the ALJ's decision. And that is the paragraph in which the ALJ summarized Kieran's testimony, including her testimony about missing all kinds of work due to panic attacks, stating that the panic attacks almost every day, they last up to six hours. I understand that. So that's where the ALJ... I understand that there's a summary of the evidence and a very selective summary of the evidence. But how do you square your position with this court's holding in Brown vs. Hunter vs. Colvin? Just a summary of evidence isn't actually an explanation of the specific testimony that the ALJ is rejecting and the reasons why. Where is the specific... Where does the ALJ specifically identify the testimony that is being rejected and the reasons why? Is there anywhere you can point to where your explanation is actually spelled out in the ALJ's decision? So in the middle of page 20, the ALJ said that Kieran's allegations are not entirely consistent with the medical evidence. And so although the ALJ never said, you know, this evidence, this testimony conflicts with this piece of evidence, what the ALJ did was he placed her testimony in that paragraph. And then in the succeeding page, he or she, excuse me, she summarized the evidence that conflicted with that, with those statements. This is not just a summary of all the medical evidence. This is a summary of evidence that in particular conflicted with the very extreme allegations that Kieran was making. But when, especially the boilerplate language that's used about not being consistent with medical records, certainly it seems would require the judge to identify the inconsistencies and explain why they're inconsistent. And that wasn't done, was it? Well, I think by juxtaposing, I think by putting this, the allegations together in that paragraph and then spending the next page pointing to some evidence that was pretty seriously inconsistent with those statements, I think the only reasonable explanation of what that is doing is it's setting up a contrast. How do you reconcile your argument right there with this court's holding in Brown-Hunter v. Colvin, where the court said that simply boilerplate statement followed by a summary of the evidence is insufficient? Well, Your Honor, I would say that in Brown-Hunter, really all you had was a summary of the evidence and it wasn't really clear what was inconsistent or what undermined any of the allegations. In that case, the ALJ just marched through all of the evidence and said, here's what it all showed. But you couldn't really tell, you know, is this supporter statements, is this underminer statements? Arguably, in this case, I would say it's worse because the ALJ selectively went through the evidence and ignored all the evidence that supported Karen's testimony and didn't explain why the ALJ ultimately chose not to credit it despite the mixed record. Yes, Your Honor. So a couple of points there. I think the fact that it was a mixed record undermines Karen's allegations because she did not allege, you know, some good days and some bad days. She was alleging pretty constant debilitating anxiety symptoms. Well, there's that one representation or spin on the testimony, at that moment in time she was in a bad period. I don't see any representation, unless you can point me to one where Ms. Karen actually says, my symptoms are not cyclical, they are permanently this way. I never have good days. I guess I don't have that exact statement, but, you know, you sometimes see people saying I have good days and bad days, and Karen just wasn't saying that, the ALJ was asking her to... Was she asked? I don't know that she was asked specifically, but, you know, we were talking about a wide period of time and the ALJ asked, why can't you work? And she said, I'm not able to be around people that, you know, quote, not being able to be around people, not sometimes unable to be around people, not able to be around people. But the record just didn't, just plain contradicted that statement. You know, she's, the record shows that she was able to function socially on many occasions. The record also included a finding that she's diagnosed with agoraphobia, and the ALJ did find that to be one of her limiting conditions, correct? Yes, Your Honor. And the ALJ did not discount all of her allegations. She didn't find this is a person with no limitations whatsoever. I want to be clear on that point. The ALJ agreed with Karen that she had very severe social limitations and she could not tolerate interaction with the public, coworkers and supervisors on a more than occasional basis. So it wasn't, you know, I don't believe anything you say, but what you're saying is true. It doesn't fully line up with the evidence in the record. And so by juxtaposing those two things, the ALJ pointed to substantial evidence in the record supporting that finding that Karen's allegations were not fully credible. Now, as Your Honor said, pointed out, did the ALJ ever point out that purported inconsistency and give Karen the opportunity to explain? The inconsistency between what she told the ALJ at the hearing and... What you're contending was an inconsistency. When did the ALJ ever say, I think this is an inconsistency, can you explain it? No, Your Honor. The ALJ did not point to all of these medical records at the hearing and say, gosh, what you're telling me is really inconsistent with all of these records. But under this court's holding in Tonopetty and the ALJ is not required to present the claimant with the inconsistencies on which the ALJ relies in the decision. Now, although as this court has been, as the, you know, the court has been discussing substantial evidence could support an alternative conclusion in this case, but that does not mean that the ALJ's decision is unsupported by an equal amount of substantial evidence. So the ALJ relied on much more than a mere scintilla of evidence to find that Karen's claims were not fully reliable. And because substantial evidence supports the ALJ's finding of fact, we would ask this court to affirm. And unless there are any further questions, I thank the court for its time. Are there any further questions? Thank you. Counsel, I think under rebuttal you have about a minute and a half. Thank you, Your Honors. I just want to speak to this point that Ms. Karen did not state that the frequency and duration of her panic attacks were essentially unchanging when she testified at the hearing. To be clear, the testimony that she provided actually in and of itself indicates a waxing and waning of severity and duration. She stated that she has panic attacks weekly, or excuse me, daily, and that they can last 20 minutes to six hours in duration. And so a 20 minute long panic attack is very different from a six hour long panic attack. So even at the hearing, her testimony indicates a waxing and waning in her symptoms. But I also want to note that in the record, she did in fact state that she has waxing and waning symptoms and that her panic attacks change over time. And that's on page 320. And that's the record that I pulled first, but I know that it is documented throughout the record where she sometimes reports improvement. She says that she's doing better, and then when she comes back, she says, you know, I'm doing worse. And it is documented throughout the record, and we've noted it in our brief. So overall, I feel that the commissioner draws conclusions that are not contained within the four corners of the ALJ decision. And I submit to the court that that is what is of greatest importance here. The ALJ did not do what she was required to do, and we ask that the court reverse and remand. Thank you. Thank you, counsel. We thank counsel for their helpful arguments. The case is submitted for decision.
judges: SCHROEDER, SUNG, Antoon